# Arnold & Porter

**Kent A. Yalowitz**
+1 212.836.8344 Direct
Kent.Yalowitz@arnoldporter.com

October 14, 2020

Hon. Analisa Torres
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

    Re:    *Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*,
              No. 19 Civ. 3123 (AT)

Dear Judge Torres:

      I write on behalf of the Bolivarian Republic of Venezuela (the Republic), defendant in the above-referenced case, to request that the Court enter the enclosed counter-proposed judgment (Ex. A hereto).

      The Republic's counter-proposed judgment is identical in all respects to the proposed judgment submitted by plaintiffs, but also includes the following additional final paragraph:

> It is further **ORDERED, ADJUDGED AND DECREED** that, until further notice from the Court, Pharo Gaia Fund, Ltd. and Pharo Macro Fund, Ltd. must refrain from selling or otherwise transferring their beneficial interest in the bonds involved in this action without advising the Court in advance and obtaining permission of the Court.

This language is taken verbatim from the numerous judgments entered in the Argentina debt litigation, as required by the enclosed February 22, 2007 Memorandum issued by Judge Griesa in that case (Ex. B hereto). This approach was followed most recently by Judge Preska in *Trinity Investments Limited v. The Republic of Argentina*, No. 14 Civ. 10016 (Ex. C hereto). And it was the recommendation put forward **by plaintiffs themselves** in their summary-judgment papers:

> [T]o the extent there is any merit to Venezuela's request, **the proper course is** not to accept an additional round of briefing, further delaying judgment, but instead **to include in the judgment a direction that Plaintiffs are not to sell the**

# Arnold & Porter

Hon. Analisa Torres
October 14, 2020
Page 2

**bonds without advising the Court in advance and obtaining approval, as was done in the Argentina litigation**. *See Lightwater Corp. Ltd. v. Republic of Argentina*, No. 02-CV-3804, 2003 WL 21146665, at *1 (S.D.N.Y. May 16, 2003).

(D.E. 47 at 27) (emphasis added).

## Plaintiffs' Position

The Republic requested that all plaintiffs include this provision. The plaintiff in the related case of *Casa Express Corp.*, No. 18-cv-11940, agreed to include this language in its proposed judgment (D.E. 76), but the plaintiffs in the *Pharo Gaia* case have inexplicably departed from their own summary-judgment position to propose a judgment that does not include the language in question.

## Discussion

As Judge Griesa put it in the *Lightwater* case (relied on by plaintiffs themselves), "the court is cognizant of the problems which would arise if the bonds in question were to be sold." 2003 WL 21146665 at *1. That concern was correct then and remains correct now.

As this Court is aware, the Republic has been diligent to confirm that the claims at issue are bona fide and free from fraud. To that end, the Republic and plaintiffs engaged in discovery to confirm (1) that plaintiffs actually own the bonds or notes, have not transferred them, and have received DTC's proxy to assert claims; (2) that plaintiffs acquired the right to sue on the bonds or notes in due course and without fraud; and (3) that the plaintiffs and their beneficial owners are not subject to sanctions or counterclaims by the Republic. Joint Report Outlining Parties' Discovery Plan Pursuant to Fed. R. Civ. P. 26(f) at 2 (Sept. 12, 2019) (D.E. 31). Plaintiffs made no objection to these discovery topics to the Court and responded cooperatively to the Republic's discovery requests.

The additional language in the counter-proposed judgment serves these same interests by ensuring that the Court's judgment is not used to perpetuate a fraud or mistake in the future. To understand why, it is necessary to explain how the transfer of beneficial interests in sovereign debt instruments is accomplished.

A typical debt instrument "is represented by a single certificated global bond registered in the name of Cede & Co. as nominee for The Depository Trust Company (DTC). Upon the closing of the transaction, the physical global bond is placed in the vault of the fiscal agent, acting as custodian for the clearing system." Mark H. Stumpf, *Certificated*

**Arnold & Porter**

Hon. Analisa Torres
October 14, 2020
Page 3

*Fraud in an Uncertificated World*, 12 Capital Markets Law J. 3 (2017) (Ex. D hereto).[1] "The DTC is the nation's only securities depository." *Apache Corp. v. Chevedden*, 696 F. Supp. 2d 723, 726 (S.D. Tex. 2010) (footnote omitted). The DTC "holds only the accounts of 'participant' brokers and banks and serves as a clearinghouse for its participants' securities transactions." *Delaware v. New York*, 507 U.S. 490, 495 (1993). "When a securities transaction occurs, the DTC changes, in its own records, which participant broker or bank 'owns' the securities. The [issuer's] records, however, reflect that these securities are owned in street name, under the DTC's 'nominee name' of Cede & Company. Neither the [issuer] nor the DTC records the identity of the beneficial owner of the shares unless that owner is registered as such." *Apache Corp.*, 696 F. Supp. 2d at 726 (citing *Delaware v. New York*, 507 U.S. at 495).

DTC participants are generally not the ultimate beneficial owners of the securities; rather, they act on behalf of other parties—not only their own customers, but other securities intermediaries, such as introducing brokers or custodians, who themselves may be acting for other securities intermediaries. *See* Christopher E. Austin et al., *Additional Lessons from the CBS-NAI Dispute: The Limitations of 'Street Name' Ownership in Effectively Exercising Stockholder Rights*, Harvard Law School Forum on Corporate Governance (Oct. 17, 2018) ("the records of the issuer (maintained by the issuer's transfer agent) indicate that the broker (or more often, another intermediary through which the broker holds the shares) is the record holder of such shares") (Ex. E hereto). Because the DTC records only the interests of its own participants, the DTC clearing system provides "convenience" for its participants and—with an exception irrelevant here—"anonymity" for the beneficial owner. J. Robert Brown, Jr., *The Shareholder Communication Rules and the Securities and Exchange Commission: An Exercise in Regulatory Utility or Futility?*, 13 J. Corp. L. 683, 690 (1988) (Ex. F hereto).

As Judge Griesa observed, however, this system raises potential "problems" in the context of a case such as this. *First*, without the restriction imposed by Judge Griesa and Judge Preska, a plaintiff may transfer the securities without also transferring this Court's judgment. And because the system for trading such securities preserves the anonymity of buyer and seller from each other and from the issuer, it will be impossible for the Republic or the Court to know—or to learn—whether or when this had occurred. Even if *these* plaintiffs act in good faith by transferring the securities *and* judgment to a third party, that third party might then transfer the bonds *alone* (either fraudulently or inadvertently) to a subsequent good-faith purchaser. In such a scenario, the bondholder (the good-faith purchaser) and the judgment holder (the third party) could *both* request payment from the Republic without the Republic ever knowing that it was being subjected to a double payment. And once a security leaves the hands of a judgment creditor, the judgment creditor has no way of knowing the identity of the purchaser.

---

[1] The author of this article, Mark H. Stumpf, is a retired partner of Arnold & Porter.

# Arnold & Porter

Hon. Analisa Torres
October 14, 2020
Page 4

*Second*, because the ultimate beneficial owners of uncertificated bonds are effectively anonymous, absent a requirement to provide notice and court approval, it is impossible for the Republic to ensure that the bonds are not transferred to Specially Designated Nationals and Blocked Persons (SDNs) subject to U.S. sanctions, or other persons who have engaged in criminal activity. Unfortunately, fraud and improper activity in the sovereign bond market is common. *See* Stumpf, *supra* (Ex. D hereto).

The Republic's proposed language will thus help to protect against fraud, as well as inadvertent error. We recognize that the Court stated in its Order that the Republic's "concerns may be addressed in the future by the federal securities laws, courts' inherent power to punish fraud on the court, and the rules of any restructuring process eventually established by [the Republic]." Order at 15 (D.E. 56). However, the Court may have misapprehended or overlooked *plaintiffs' own proposed anti-fraud mechanism*: one that served the Court and the parties well in the Republic of Argentina debt cases. If the underlying securities remain freely transferable without notice or court approval, fraudulent (or even innocent) attempts to collect double payments on the bonds could occur without the Republic's—or plaintiffs'—knowledge. Such transfers could well be legally impossible to unwind after the fact, as bona fide good-faith purchasers for value may recover even in the presence of an adverse claim on the transferor. *See* N.Y. UCC §§ 8-302, 8-105; *Ctr. v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 (1985); *Lapidus v. Hiltzik*, 160 A.D.2d 682, 683 (N.Y. App. Div. 2d Dept. 1990).

We urge the Court to follow the holdings of Judge Griesa and Judge Preska and the plaintiffs' own suggestion in fashioning the judgment here.

Respectfully submitted,

Kent A. Yalowitz

cc: ECF Counsel

Enclosures