UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHARO GAIA FUND LTD. and PHARO
MACRO FUND LTD.,

          *Plaintiffs*,

    v.

THE BOLIVARIAN REPUBLIC OF
VENEZUELA,

          *Defendant*.

Case No. 19-cv-3123 (AT) [rel. 18-cv-11940]

### DEFENDANT BOLIVARIAN REPUBLIC OF VENEZUELA'S OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 1610(C)

Defendant Bolivarian Republic of Venezuela (the Republic) hereby opposes Plaintiffs' motion for a determination pursuant to 28 U.S.C. § 1610(c) that a reasonable period of time has elapsed since this Court's Final Judgment order against the Republic on October 16, 2020, such that Plaintiffs may seek to enforce the judgment against the Republic's assets.

### BACKGROUND

As the Court is aware, Venezuela and its people are suffering an unparalleled and complex political, economic, and humanitarian crisis. As detailed in the Republic's motion for a humanitarian stay (D.E. 43), Venezuela's economic collapse and the toll on its citizens and civic institutions has been devastating. The scale of the suffering of the Venezuelan people is impossible to express fully: Extreme poverty, starvation, lack of clean water, regular blackouts, and a collapsed healthcare system have caused one of the worst humanitarian and refugee crises humanity faces today. *See* D.E. 43 at 2-6. And these material deprivations have been

compounded by endemic corruption and brutal repression under the illegitimate regime of Nicolás Maduro, who has clung to power through fraudulent elections and systematic subversion of Venezuela's democratic institutions.  This crisis has not abated in the time since the Republic first requested a humanitarian stay; if anything, it has grown deeper, exacerbated by a global pandemic.

Amidst this crisis, the government of Interim President Juan Guaidó—the sole authority recognized by the United States and the broader international community—has been working diligently to address the Republic's legacy debt obligations as part of its plans to restore Venezuela's economic prosperity.  But the Guaidó government does not have full access to the necessary levers of power with Venezuela's government at this time.  The illegitimate Maduro regime has unlawfully usurped substantial control of the operation of the government within Venezuela's territory and has refused to recognize the constitutional authority of Guaidó. Among other things, the Maduro regime controls the Finance Ministry, Executive Branch, and Supreme Court, and the operations and assets of key government owned entities within Venezuela.  As a result, the Guaidó government does not have full access to the Republic's operations, facilities, or personnel.

Notwithstanding these constraints, President Guaidó has taken significant steps in order to address legacy claims against the Venezuelan government and to protect the interests of the Venezuelan people.  To that end, the Republic is developing an orderly, consensual debt-restructuring process under which all similarly situated claims will be treated fairly and equally. *See* D.E. 44-1 ("Guidelines for the Renegotiation of the Chávez/Maduro Era Legacy Public External Debt").  And this plan is being prepared in conjunction with the Guaidó government's discussions with the United States government, which has expressed interest in assisting the

Guaidó government in addressing these issues.   This process has been delayed, however, given more-pressing demands on the Republic's limited resources.

## ARGUMENT

In light of the ongoing crisis in Venezuela, it would not be appropriate to permit enforcement proceedings against the Republic at this time.  The Foreign Sovereign Immunities Act (FSIA) directs that "no attachment or execution . . . shall be permitted until the court has . . . determined that a reasonable period of time has elapsed following the entry of judgment."  28 U.S.C. § 1610(c).  In determining whether any period of time is "reasonable," courts consider the realities of each foreign state's situation on a case-by-case basis, "tak[ing] into account procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months; representations by the foreign state of steps being taken to satisfy the judgment; or any steps being taken to satisfy the judgment; or evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment."  *Levin v. Bank of New York*, No. 09-cv-5900, 2011 WL 812032, at *7 (S.D.N.Y. Mar. 4, 2011) (quoting H.R. Rep. No. 94-1487, at 30 (1976)).

The Guaidó government—the only Venezuelan government recognized by the United States to act on behalf of the Republic—cannot reasonably be expected to make payments from Venezuela's public fisc at this time.  Not only is a humanitarian crisis of daunting proportions consuming all of the available resources and attention of the Republic; there are also practical impediments that prevent the Guaidó government from paying judgments during this time of political uncertainty.  The Guaidó government does not have full access to the necessary levers of power within Venezuela while the Maduro regime continues to control the Finance Ministry, Executive Branch, and Supreme Court, and the operations and assets of key government-owned entities within Venezuela. In light of these constraints, it is unreasonable to expect the Republic

to be able to pay Plaintiffs millions of dollars from the public fisc a mere four months after entry of judgment.

To be clear, as the Republic has stated from the outset of this litigation, the Guaidó government is fully committed to honoring all of the Republic's debt obligations.  And there is absolutely no evidence that the Republic is attempting to avoid payment of Plaintiffs' judgment. To the contrary, the Guaidó government is working diligently to develop an orderly, consensual debt-restructuring process under which all similarly situated claims will be treated equally.  But the Republic needs more time to address the current political crisis before it can effectively implement the restructuring process.  Based on the unprecedented and complex financial and humanitarian crisis in Venezuela, the Guaidó government should be given time to address the Republic's obligations in a global manner that best serves the interests of the Venezuelan people and puts all of the Republic's creditors on equal footing.  Allowing enforcement actions to proceed through piecemeal litigation at this juncture puts at risk assets that will be required for long-term, humanitarian relief.  Equally important, permitting Plaintiffs to seek to execute their judgment now will require the Republic to expend resources to protect its assets—resources that, again, could be used for humanitarian purposes.

Even putting aside the present crisis, it is unreasonable for this Court to permit execution at a time when Plaintiffs lack the necessary licenses from the Office of Foreign Assets Control (OFAC) that would be necessary for them to execute their judgment against the Republic's assets.  As Plaintiffs recognize, "the sanctions put in place by OFAC currently prevent them from executing a writ of attachment against assets of Venezuela unless or until the sanctions are lifted or Plaintiffs receive a specific license."  Mot. at 4.  Indeed, OFAC guidance confirms that the Executive Branch draws a clear distinction between *litigating* a case to entry of a money

judgment and *executing* that judgment.  The guidance explains that while "a specific license from OFAC is not ordinarily required to initiate or continue U.S. legal proceedings against" a blocked entity, "a specific license from OFAC is required for . . . the enforcement of any . . . judgment . . . through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect [blocked] property or interests in [such] property."  OFAC, Frequently Asked Questions No. 808, https://bit.ly/2rK3gaE.  The guidance also provides a non-exhaustive list of "measures" for which "a specific license from OFAC would be required," which include "seizing," "levying upon," "attaching," or "encumbering" the property.  *Id.*  Importantly, Plaintiffs do not purport even to have sought, much less to have been granted, a license from OFAC, meaning they have no authority to seek to execute their judgment or attach the Republic's assets. *See* Pls.' Mot. at 4.

This sanctions regime is just one expression of the United States' foreign policy respecting Venezuela.  Apart from sanctions, the Executive Branch, which is charged by our Constitution with executing the foreign policy of the United States, has made clear its desire to freeze the status quo with respect to all blocked assets of the Republic unless and until it gives specific permission for further action. As the United States explained in another case in which a judgment creditor of the Republic seeks to move forward with execution, the United States has "strong foreign policy and national security interests in supporting the interim government's efforts to reconstruct the Venezuelan economy following the departure of Maduro," and the execution of judgments against the Republic's assets in the United States "would be greatly damaging" to "Guaidó, the interim government, and U.S. foreign policy goals in Venezuela." Statement of Interest of the United States, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del. July 16, 2020) (D.E. 212) (attached as Exhibit A).  Moving

forward with execution under circumstances that would "greatly damag[e]" our Nation's foreign policy would, by definition, not be "reasonable."

As this case is the first public debt case against the Republic that has reached this stage of litigation during the present crisis, moreover, the Republic submits that it would be especially appropriate to solicit the views of the United States on this matter, to permit the new Biden Administration to weigh in on the important foreign policy questions these cases raise. *Cf.* Memorandum Order at 23, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del. Dec. 12, 2019) (D.E. 154) (inviting the views of the United States with regard to attempts to execute a judgment arising out of an arbitral award against the Republic). Indeed, multiple considerations—including the complex relationship among this Court's judgment and any future orders, the United States' foreign policy with respect to Venezuela, and Plaintiffs' failure to obtain an OFAC license—call out here for the input of the federal government. Accordingly, the Republic respectfully submits that the Court should not proceed with execution without first requesting the views of the United States. *See* 28 U.S.C. § 517 (the Attorney General may authorize an officer of the Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States").

Finally, the Republic acknowledges that two district courts in cases involving the Republic have ruled that periods of five months and two months were reasonable periods of time within the meaning of § 1610(c). *See* Pls.' Mot. at 3 (citing *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 419 F. Supp. 3d 51 (D.D.C. 2019); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 16-CV-661, 2017 WL 6349729 (D.D.C. June 9, 2017)). The Republic respectfully submits that those decisions did not fully account for the unique and devastating crisis faced by the Republic. Nor did those decisions adequately consider and weigh

6

the foreign policy interests of the United States (indeed, neither decision had the benefit of the most recent OFAC guidance, and the *Crystallex* decision was issued before the United States recognized Interim President Guaidó in January 2019).  In light of those deficiencies, the Court should decline to follow those decisions.  Instead, in order to avoid exacerbating the current political and humanitarian crisis and undermining U.S. foreign policy goals in Venezuela, the Court should exercise its broad discretion under § 1610(c) to deny Plaintiffs' attempts to execute on their judgment, without prejudice to a later motion for execution at a more appropriate time.

## CONCLUSION

The Court should deny Plaintiffs' motion for relief pursuant to 28 U.S.C. § 1610(c) at this time.  In the alternative, the Court should seek the views of the United States under 28 U.S.C. § 517 with regard to the foreign policy interests implicated by the present motion.

Dated: March 2, 2021

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP

By: _____
        Kent A. Yalowitz
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212.836.8000
Kent.Yalowitz@arnoldporter.com


        E. Whitney Debevoise (*pro hac vice*)
        Stephen K. Wirth
601 Massachusetts Ave., N.W.
Washington, DC 20001-3743
Telephone: +1 202.942.5000
Stephen.Wirth@arnoldporter.com

*Attorneys for the Bolivarian Republic of Venezuela*