UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHARO GAIA FUND, LTD. and PHARO MACRO FUND, LTD., <br><br>　　　　　Plaintiffs, <br><br>　　v. <br><br>THE BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br>　　　　　Defendant. | Case No. 19-cv-3123-AT <br> Related to 18-cv-11940-AT |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE JUDGMENT AND VOLUNTARILY DISMISS CLAIMS WITHOUT PREJUDICE**

In October 2020, Plaintiffs Pharo Gaia Fund, Ltd. and Pharo Macro Fund, Ltd. obtained a money judgment against Defendant the Bolivarian Republic of Venezuela based on Venezuela's failure to make contractually mandated payments on two series of sovereign bonds. The theoretical benefits that should have accrued to Plaintiffs by virtue of that judgment have failed to materialize in reality. Since obtaining the judgment, Plaintiffs have diligently pursued extensive enforcement efforts to try to enforce it. But those attempts have been stymied by unforeseen circumstances outside Plaintiffs' control. Sanctions imposed by the U.S. government not only bar Plaintiffs from collecting on the judgment but also adversely affect Plaintiffs' ability to transfer the underlying bonds, including even to use them as part of its ordinary financing activity in the repo market. Moreover, a long-anticipated auction of valuable Venezuelan assets in Delaware federal court will not attract a sufficiently large bid to compensate Plaintiffs despite their longstanding participation in that proceeding. All the while, the judgment remains unpaid.

These extraordinary circumstances compel Plaintiffs to ask this Court to vacate their judgment under Rule 60(b)(6) and thereafter dismiss the underlying claims without prejudice under Rule 41(a)(2). This relief is unusual but necessary under the circumstances, as it is now

clear that Plaintiffs' judgment works only to obstruct their efforts to obtain some value on their long-held bonds. Vacatur and dismissal will not prejudice Venezuela. To the contrary, Venezuela will *benefit* from the relief Plaintiffs seek. Moreover, dismissal without prejudice is consistent with the approach Venezuela has adopted in other New York courts to dispose of similarly situated bondholder suits. Plaintiffs therefore respectfully request that this Court vacate their judgment and dismiss this case without prejudice.[1]

## BACKGROUND

### A.     Procedural History

As this Court is aware, Venezuela defaulted on its debts starting in late 2017 and has failed to repay them ever since. In January 2019, Plaintiffs brought a breach-of-contract action against Venezuela in New York state court, which Venezuela removed to this Court in April 2019. ECF 1. Plaintiffs alleged that Venezuela was in breach of its obligations on two series of sovereign bonds beneficially held by Plaintiffs—the 7.75% 2019 Bonds and the 13.625% 2018 Bonds.

In September 2020, this Court granted Plaintiffs' motion for summary judgment. ECF 56. The Court held that Venezuela had waived sovereign immunity and breached its contractual obligations, and that Plaintiffs were entitled to damages.

In October 2020, the Court entered a final judgment in favor of Plaintiffs. ECF 62. The judgment awarded Plaintiffs a total of $389,089,012.30 in unpaid principal and accrued contractual interest, plus post-judgment interest and attorneys' fees. *Id.* Venezuela did not appeal.

---

[1] Plaintiffs are contemporaneously moving to vacate a default judgment this Court entered against Venezuela in *Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, No. 20-cv-8497-AT (S.D.N.Y. Oct. 25, 2021), ECF 34.

### B. U.S. Sanctions And Venezuela's Refusal To Pay Have Rendered Plaintiffs' Judgment Effectively Worthless

Since the judgment was entered, Venezuela has failed to comply with its obligation to pay Plaintiffs. Plaintiffs therefore have made every effort to enforce the judgment against Venezuela and its state-owned oil company (and alter ego) Petróleos de Venezuela, S.A. (PDVSA). Plaintiffs promptly sought a determination from this Court that a reasonable period of time had elapsed since the judgment was entered such that enforcement could commence consistent with the FSIA. *See* 28 U.S.C. § 1610(c); ECF 69. The Court granted that motion in May 2021. ECF 74. Plaintiffs then engaged in wide-ranging post-judgment discovery over multiple years, which resulted in (for example) protective orders entered in this case and litigation in other courts. *See, e.g.*, ECF 81, 89; *see also Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, No. N21M-06-084 (Del. Super. Ct. Aug. 20, 2021).

Plaintiffs' enforcement efforts, however, have been stymied not only by Venezuela's failure to pay, but also by ever-expanding U.S. sanctions against Venezuela and PDVSA. The U.S. government began with targeted sanctions. In 2015, for example, the government sanctioned particular Venezuelan officials, including those responsible for "actions or policies that undermine democratic processes or institutions" in Venezuela. *See* Exec. Order No. 13692 (Mar. 8, 2015). By 2019, however, the government had "blocked" "[a]ll property and interests in property of the Government of Venezuela [including PDVSA] that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person." Exec. Order No. 13884 (Aug. 5, 2019). Under implementing regulations issued by the Office of Foreign Assets Control, those sanctions prohibit the "enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other

3

judicial process purporting to transfer or otherwise alter or affect" Venezuela's or PDVSA's property or "interests in" that property. 31 C.F.R. § 591.407.

These sweeping sanctions were widely viewed as an effort by the U.S. government to effect a regime change in Venezuela. *See* Virginia López & Sibylla Brozinsky, *US Hits Nicolás Maduro with Sanctions After Venezuela's 'Sham' Election*, Guardian (July 31, 2017), https://tinyurl.com/5b7u2f76. It was expected that, following a regime change, sanctions would be removed and Venezuela and PDVSA would restructure their debts. Regime change has not occurred and remains unlikely, and sanctions have persisted for years—and even recently been strengthened.[2]

Under OFAC's sanctions regime, the only way for a U.S. person to enforce a judgment against Venezuela is to secure a specific license from OFAC—which is entirely within OFAC's discretion to grant. To date, Plaintiffs are aware of only one specific license that OFAC has issued with respect to attachable property of Venezuela or PDVSA. That license authorized attachments of the shares of CITGO's holding company, PDVH, in Delaware federal court. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* (*Crystallex*), No. 1:17-mc-00151-LPS (D. Del. May 5, 2023), ECF 555.

Within months of that license being made public, Plaintiffs registered the judgment in Delaware federal court and sought and obtained attachments of the PDVH shares. *See Pharo Gaia Fund, Ltd. v. Bolivarian Republic of Venezuela*, No. 23-mc-360-LPS (D. Del. Aug. 2, 2022), ECF 1. Since then, Plaintiffs have diligently participated in the ongoing sale process in that court. *See Crystallex*, ECF 679, 745, 778, 809, 1030, 1122. Nevertheless, it has become clear that

---

[2] *See* OFAC, General License No. 41B, "Authorizing the Wind Down of Certain Transactions Related to Chevron Corporation's Joint Ventures in Venezuela" (Mar. 24, 2025), https://tinyurl.com/yxvy9tmf.

4

Plaintiffs are exceedingly unlikely to obtain any relief from the auction of the PDVH shares. The creditors ahead of Plaintiffs in the waterfall hold around $18 billion in judgments against Venezuela and PDVSA, *see Crystallex*, ECF 789-1, but the recently proposed bid offers come nowhere close to that amount, *Crystallex*, ECF 1596, at 15 (proposed bid of $3.7 billion in cash for satisfaction of judgment holders). With that avenue to relief closed, Plaintiffs' judgment has become essentially worthless.

In fact, the judgment is actively harming Plaintiffs and their investors, which include many state and local pension plans, by making it more difficult for Plaintiffs to trade the underlying bonds or use them in the ordinary course as a financing tool in the repo market. Because a portion of the debt originally evidenced by the bonds has merged into the judgment, Plaintiffs' bonds are not fungible with bonds that are unencumbered by a judgment. To get the full bundle of creditor rights, a transferee of Plaintiffs' bonds would also need to take an assignment of the judgment. Although OFAC has issued a general license authorizing secondary-market trading of Venezuelan bonds, *see* OFAC, General License No. 3I (Oct. 18, 2023), https://tinyurl.com/35466hm2, OFAC has refused to clarify whether it views the assignment of a judgment against Venezuela as prohibited by sanctions. The judgment is therefore limiting Plaintiffs' current ability to deal efficiently with the bonds. It is also unlikely that Plaintiffs' status as a judgment creditor would provide any benefit in a future restructuring of Venezuela's external debt, because Venezuela's stated policy is to treat judgment creditors no different than other creditors in a restructuring. *See* ECF 44-1, at 2.

## ARGUMENT

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party … from a final judgment," and lists six grounds for relief. Plaintiffs seek to vacate their judgment under Rule 60(b)(6), a catch-all provision authorizing vacatur for "any other reason that justifies relief"

5

not encompassed within the first five subparts of Rule 60(b). Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) thus contains "a grand reservoir of equitable power to do justice in a particular case." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quotation omitted). "Relief is warranted where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (quotation omitted). A movant must also seek relief "in a timely fashion and assert[] a ground justifying relief that is not a ground encompassed within any of the first five clauses." *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977); Fed. R. Civ. P. 60(c). Plaintiffs meet all of those requirements.

I.  **Extraordinary Circumstances And Undue Hardship Favor Vacatur**

To obtain vacatur under Rule 60(b)(6) a party must establish either "extraordinary circumstances" or that "the judgment may work an extreme and undue hardship." *Brien*, 588 F.3d at 176. Plaintiffs have made both showings here.

The circumstances justifying vacatur in this case are extraordinary by any stretch. Most Rule 60(b)(6) cases involve a party seeking relief from a judgment entered *against* them. *See, e.g.*, *Brien*, 588 F.3d at 176. Here, however, Plaintiffs seek relief from a money judgment entered *in their favor*. That unusual request is the product of unprecedented circumstances. As discussed, a combination of Venezuela's failure to pay and the unforeseeably prolonged and stringent U.S. sanctions against Venezuela have rendered Plaintiffs' judgment practically worthless. That is not for lack of diligence on Plaintiffs' part. Plaintiffs have been seeking to enforce their judgment for years. They promptly obtained this Court's permission to enforce the judgment, conducted wide-ranging and years-long post-judgment discovery, and participated in the only enforcement proceeding that has been licensed by OFAC. *See supra* at 3-4. Yet they have been repeatedly

rebuffed by the kind of "unforeseen contingencies" that Rule 60(b)(6) was designed to accommodate. *Lasky v. Cont'l Prods. Corp.*, 804 F.2d 250, 255 n.9 (3d Cir. 1986).

Plaintiffs also are in the highly unusual situation of suffering "extreme and undue hardship" from a judgment entered in their favor. *Brien*, 588 F.3d at 176. As explained above, U.S. sanctions not only prevent Plaintiffs from enforcing their judgment—but also make it more difficult for them to transfer the underlying bonds or use the bonds as part of their ordinary financing activity in the repo market. To get the full bundle of creditor rights, a transferee of Plaintiffs' bonds would also need to take an assignment of the judgment, and OFAC refuses to clarify whether a judgment against Venezuela can be assigned consistent with sanctions. *See supra* at 5. The resulting lack of liquidity due to OFAC's refusal to greenlight an assignment of the judgment harms Plaintiffs. That acute hardship also makes this a heartland Rule 60(b)(6) case.

## II. The Other Subsections Of Rule 60(b) Are Inapplicable

Plaintiffs are seeking vacatur because their money judgment, rendered effectively worthless by Venezuela's nonpayment and indefinite U.S. sanctions, materially and adversely affects their ability to deal with the bonds in the secondary market and the repo market. This is clearly "not a ground encompassed within any of the first five clauses" of Rule 60(b). *Cirami*, 563 F.2d at 32; *Brien*, 588 F.3d at 175.

Plaintiffs do not assert the kind of "mistake, inadvertence, surprise, or excusable neglect" that justifies Rule 60(b)(1) relief. Fed. R. Civ. P. 60(b)(1); *Brien*, 588 F.3d at 175 (Rule 60(b)(1) is designed to "correct legal errors by the court"). Nor could Plaintiffs seek relief under Rule 60(b)(2), (3), or (4): They are not relying on "newly discovered evidence" that calls into question the legal basis for the judgment, asserting that the judgment was procured through "fraud … misrepresentation, or misconduct by an opposing party," or claiming that the "judgment is void."

7

Rule 60(b)(5) is also inapplicable. It authorizes vacatur if the "judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The Second Circuit has held that Rule 60(b)(5) applies only to forward-looking injunctive orders and "does not cover the case of a judgment for money damages" like this one. *Ryan v. U.S. Lines Co.*, 303 F.2d 430, 434 (2d Cir. 1962). The lack of any other basis under Rule 60(b) for the relief Plaintiffs are seeking here confirms that Plaintiffs have established extraordinary circumstances warranting vacatur.

### III. Plaintiffs' Motion Is Timely

Plaintiffs' motion is also "made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Timeliness under Rule 60(c) depends upon "the particular circumstances of the case, taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality." *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) (quotation omitted). Here, those considerations favor vacatur.

*First*, the reason Plaintiffs have waited years to seek vacatur of their judgment is that they have been diligently attempting to enforce it. In assessing timeliness, courts "are interested less in the number of years from the time of judgment, than [they] are in what has happened in between." *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 191 (2d Cir. 2006) (vacating judgment more than five years after its entry). And in this case, what has "happened in between" is years of exhaustive enforcement efforts that have not borne fruit because of Venezuela's nonpayment and sweeping U.S. sanctions. The final straw was confirmation in recent weeks that Plaintiffs are extremely unlikely to obtain any recovery in Delaware from the auction of the PDVH shares. *See supra* at 5. Plaintiffs brought this motion promptly thereafter. It would be perverse if Plaintiffs' diligent enforcement efforts counted *against* them here; a defendant should not be more secure against vacatur the longer it successfully evades enforcement of a money judgment.

8

*Second*, vacatur of the judgment will not prejudice Venezuela.  To the contrary, vacating the money judgment can only benefit Venezuela by relieving it of a court order requiring it to pay hundreds of millions of dollars.  *See, e.g.*, *Freedom Mortg. Corp. v. Astudillo*, 2024 WL 4350336, at *4 (E.D.N.Y. Aug. 23, 2024) (no "prejudice" to defendant from vacating judgment "given that the judgment as it stands benefits Plaintiff, the moving party here, and disadvantages" defendants).  As discussed below, moreover, Plaintiffs are seeking to immediately dismiss their claims without prejudice, which would leave the parties in the same position they were in before Plaintiffs filed suit.  Venezuela therefore has no valid basis for claiming prejudice here.

*Third*, the "public interest in preserving the finality of the judgment and the development of decisional law" is at its nadir here.  *Viera v. United States*, 595 F. Supp. 3d 1, 3 (S.D.N.Y. 2022) (quotation omitted).  This breach-of-contract case did not generate precedent-setting decisions.  Instead, it was "simply an application of the unique facts of th[e] case to well-established legal standards."  *Viera*, 595 F. Supp. 3d at 3.  The public interest does not favor maintaining a decision "resolv[ing] a private dispute" by which "no non-parties would be impacted."  *Id.*

## IV.   The Court Should Dismiss This Case Without Prejudice

If the Court vacates the judgment, Plaintiffs request that the Court dismiss the underlying claims without prejudice.  Under Rule 41, a court may dismiss an action "on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  Voluntary dismissal generally "will be allowed if the defendant will not be prejudiced thereby."  *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) (quotation omitted).  The "mere prospect of a second lawsuit or some tactical disadvantage [to a defendant] is not sufficient legal prejudice to prevent a Rule 41(a)(2) dismissal." *Jaskot v. Brown*, 167 F.R.D. 372, 373 (S.D.N.Y. 1996).

Here, Venezuela will not be prejudiced by dismissal without prejudice for largely the same reasons it will not be prejudiced by vacatur of the judgment.  *See supra* at 8-9.  Venezuela can only

9

benefit from the dismissal of claims that this Court has already found to be meritorious. The "mere prospect" that Plaintiffs could refile their claims cannot prevent dismissal. *Jaskot*, 167 F.R.D. at 373. And refiling is particularly unlikely to occur here, as it would make little sense for Plaintiffs, having vacated a judgment in their favor and sought dismissal of their meritorious claims, to turn around and sue Venezuela again. Venezuela, moreover, has entered into numerous court-endorsed stipulations dismissing without prejudice various bondholders' claims *before* they reached judgment. *See, e.g.*, *Multisuma Inv. Corp. v. Bolivarian Republic of Venezuela*, No. 23-cv-9670 (S.D.N.Y. Aug. 28, 2024), ECF 22; *Aurelius Capital Master, Ltd. v. Bolivarian Republic of Venezuela*, No. 655071/2023 (Nov. 11, 2023), Dkt. 13. There is no justification for a different result here.[3]

## CONCLUSION

This Court should vacate the judgment and dismiss the case without prejudice.

---

[3] If the Court is not inclined to dismiss the claims without prejudice, Plaintiffs respectfully request that the Court leave the judgment in place.

Dated: April 16, 2025

Washington, DC

Respectfully submitted,

*/s/ Matthew D. McGill*
Matthew D. McGill
MMcGill@gibsondunn.com
Nick Harper (*pro hac vice pending*)
NHarper@gibsondunn.com
1700 M St., N.W.
Washington, DC 20036
(202) 887-3680

*Counsel for Plaintiffs Pharo Gaia Fund, Ltd. and Pharo Macro Fund, Ltd.*

## WORD COUNT CERTIFICATION

I, Matthew D. McGill, certify that this memorandum complies with the word-count limitations in Section III.D of this Court's Individual Practices in Civil Cases because it contains 3,004 words, excluding the caption, signature blocks, and this certificate. In preparing this certification, I have relied on the word-processing system used to prepare this memorandum.

Dated: April 16, 2025

*/s/ Matthew D. McGill*
Matthew D. McGill
